# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **ANTHONY KNOWLES** and **SHELLEY KNOWLES**, *Plaintiffs*, v. **INGLES MARKETS, INC.**, *Defendant*. | **CIVIL ACTION NO. 5:22-cv-00407-TES** |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Anthony and Shelley Knowles brought this premises liability action against Defendant Ingles Market, Inc. ("Ingles"). *See* [Doc. 1]. Ingles now moves for summary judgment. [Doc. 17]. For the reasons explained in further detail below, the Court **DENIES** Ingles's Motion for Summary Judgment [Doc. 17].

## BACKGROUND[1]

On the afternoon of January 14, 2021, Plaintiff Anthony Knowles made a routine trip to the Ingles grocery store in Forsyth, Georgia, to pick up a few items for dinner. [Doc. 17-1, Knowles Depo., pp. 14:20—15:2]. Arriving at the store around 4:15 p.m, Mr. Knowles selected a cart and began shopping. [*Id.* at p. 16:19]. Mr. Knowles turned onto

---

[1] In considering this Motion for Summary Judgment, the Court must believe the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

aisle eight around 4:30 p.m., and as he stepped around another shopper to retrieve thyme from the spice rack, an unseen substance on the floor caused his left foot to slip. [*Id.* at pp. 20:25—21:11]. Mr. Knowles "threw out [his] arms" and "flailed around" to regain his balance. [*Id.* at pp. 22:3–5, 22:14–16]. Even though he did not fall to the ground or make contact with any object, Mr. Knowles immediately felt "a lot of pain in [his] arm." [*Id.* at pp. 22:3–12, 23:13–16].

Upon steadying himself, Mr. Knowles identified a white powdery substance, which he believed to be spilled flour, as the cause of his slip. [*Id.* at p. 22:24]. He did not notice the substance before his accident, nor does he know how long it had been there or how it came to be on the floor. [*Id.* at pp. 21:21—22:2, 23:3–8]. Mr. Knowles took a picture of the aisle to document the scene, found an employee, and informed them of the hazard. [*Id.* at p. 27:18–23]. After shopping for another 25 minutes, Mr. Knowles reported the incident to Ingles's customer service. [*Id.* at p. 42:12–14].

Mr. Knowles's incident in Ingles left him with "serious and permanent physical injuries to his right arm and right shoulder, requiring surgery." [Doc. 1, ¶ 28]. He has incurred medical expenses "in excess of $42,000.00" and "continues to suffer great physical and emotional pain and suffering." [*Id.*]. His wife, Shelley Knowles, "has suffered damages in the nature of loss of companionship and consortium by virtue of" Mr. Knowles's injuries. [*Id.* at ¶ 31].

When Mr. Knowles arrived at the Forsyth Ingles, Nathan Buice, the store's co-

manager on duty, was in the middle of conducting a routine safety inspection—known as a "sweep"—that started by around 3:58 p.m. and ended by around 4:45 p.m. [Doc. 17-2, Buice Depo., pp. 8:25–9:5, 44:12–15, 41:18–25]. Mr. Buice's responsibilities included inspecting each aisle every two hours to ensure customer and employee safety. [*Id.* at pp. 10:12–15, 24:22—25:10]. During a sweep, Mr. Buice would walk up and down the store's aisles for 30 to 45 minutes, visually inspecting each aisle to identify and remove anything he deemed a potential hazard. [*Id.* at pp. 24:22–25:10, 41:18–25]. He performed a total of four sweeps on the day of Mr. Knowles's accident, including one at 2 p.m. and one at 4 p.m. [*Id.* at p. 44:2–15]; [Doc. 17-2, p. 86].

## DISCUSSION

Plaintiffs filed this lawsuit on November 17, 2022. [Doc. 1]. Ingles filed an Answer on December 13, 2022, and the parties proceeded to discovery. [Doc. 1]; [Doc. 5]; [Doc. 9]. Now, having completed discovery, Ingles moves for summary judgment. [Doc. 17]. Before reaching the merits of Ingles's Motion, the Court first sets out the law that will guide its analysis.

### A.   **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to issues for which the movant would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of

material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant may (1) simply point out an absence of evidence to support the non-moving party's case or (2) provide "affirmative evidence demonstrating that the [non-movant] will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)). If the movant satisfies its burden, the burden shifts to the non-movant, who must "go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the [non-moving] party.'" *Four Parcels*, 941 F.2d at 1438 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

In considering this Motion, "the evidence of the [nonmovant] is to be believed,

and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court need not draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 796 (11th Cir. 2011). "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *Tullius v. Albright*, 240 F.3d 1317, 1320 (11th Cir. 2001).

  **B.** <u>**Analysis**</u>

Ingles moves for summary judgment on the grounds that Plaintiffs cannot show "that Ingles had actual or constructive knowledge of the hazard" on the floor of its store that caused Mr. Knowles to slip and injure himself. [Doc. 17-3, p. 1]. Ingles argues that because it followed reasonable inspection procedures on the day of Mr. Knowles's accident, the burden shifts to Plaintiffs to show that the substance was on the floor for long enough for constructive knowledge of it to be imputed to Ingles. [*Id.* at p. 14]. And Plaintiffs cannot meet their burden, according to Ingles, because "Mr. Knowles concedes he has no knowledge as to the length of time the hazard was on the floor." [*Id.*]. Plaintiffs contend that "a genuine dispute of material fact" remains "regarding the completion time of the inspection procedure" and that a reasonable jury could find that Ingles's inspection procedure was unreasonable. [Doc. 18, p. 11].

  In Georgia, a premises owner or occupier who invites the public to enter the premises for a lawful purpose is liable to invitees "for injuries caused by his failure to

exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. A premises owners or occupier owes invitees a duty "to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters," including "inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 408 (Ga. 1997) (citing *Alterman Foods v. Ligon*, 272 S.E.2d 327, 331 (Ga. 1980)). Constructive knowledge may be inferred when there is evidence that (1) "an employee of the [owner/occupier] 'was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard'" or (2) the owner "fails to exercise reasonable care in inspecting and keeping the premises in a safe condition." *Alterman Foods*, 272 S.E.2d at 330 (quoting *Winn-Dixie Stores v. Hardy*, 226 S.E.2d 144, 144 (Ga. Ct. App. 1976)); *see also Youngblood v. All American Quality Foods, Inc.*, 792 S.E.2d 417 (Ga. Ct. App. 2016); *Ingles Martkets, Inc. v. Martin*, 513 S.E.2d 536, 537 (Ga. Ct. App. 1999) (quoting *Hartley v. Macon Bacon Tune*, 507 S.E. 2d 259, 261–62 (Ga. Ct. App. 1998)).

To prevail at summary judgment on the second *Alterman* prong, an owner or occupier must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the accident. *Alterman Foods*, 272 S.E.2d at 330 (quoting *Hardy*, 226 S.E.2d at 144); *Shepard v. Winn Dixie*, 527 S.E.2d 36, 39 (Ga. Ct. App. 1999). "[W]hat constitutes a reasonable inspection

6

procedure var[ies] with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location." *Id.* An inspection program's reasonableness, like other "'routine' issues of premises liability," is generally a question of fact to be decided by a jury, not a question of law to be decided at summary judgment. *Robinson*, 493 S.E.2d at 408.

In this case, the only issue is whether a "genuine dispute as to a[] material fact" remains as to Ingles's constructive knowledge of the hazard. *See* Fed. R. Civ. P. 56(a); [Doc. 17]. Ingles does not dispute that a hazardous condition in its store caused Mr. Knowles's injury, and Plaintiffs concede that Ingles did not have actual knowledge of the hazard. [Doc. 18, p. 8]; *see* [Doc. 17]. Plaintiff also concedes that "[n]o employee of Ingles was on aisle 8 at the time of [Mr. Knowles's] slip incident," so the only remaining issue material to Ingles's constructive knowledge of the hazard is whether aisle eight was inspected within a reasonable time before Mr. Knowles's accident. [Doc. 18-1, p. 4, ¶ 1]; *see Alterman Foods*, 272 S.E.2d at 330; *Shepard*, 527 S.E.2d at 39.

Georgia courts consistently hold that a lapse of more than half an hour between an inspection and an accident creates a jury question. *Compare Sain v. K-Mart Corp.*, 380 S.E.2d 299, 301 (1989) (holding that an inspection 10–15 minutes before an injury was reasonable as a matter of law), *and Brooks v. Kroger Co.*, 390 S.E.2d 280, 281 (1990) (same), *with Shepard*, 527 S.E.2d at 39 (reversing grant of summary judgment for defendant that inspected and cleaned its floors every 30 minutes), *and Johnson v. All American Quality*

*Foods, Inc.*, 798 S.E.2d 274, 277 (Ga. Ct. App. 2017) (reversing grant of summary judgment for defendant who inspected its floors every hour and completed an inspection 38 minutes prior to the plaintiff's injury).[2]

First, a "dispute as to a[] material fact" remains in this case as to the timing of the last inspection of aisle eight before Mr. Knowles's accident. *See* Fed. R. Civ. P. 56(a). Ingles's exact argument is difficult to pin down, but Ingles appears to claim that Mr. Buice inspected aisle eight within half an hour of Mr. Knowles's accident, that "no substance was present on the floor" at that time, and that Plaintiffs therefore cannot prove that Ingles had constructive knowledge of the hazard because "inspections conducted thirty minutes before [an] injury-causing event [are] adequate as a matter of [Georgia] law." *See* [Doc. 17-3, pp. 13–14 (citing *Hopkins v. Kmart Corp.*, 502 S.E.2d 476 (Ga. Ct. App. 1998)]; [Doc. 19, p. 2]. Plaintiffs dispute that Mr. Buice inspected aisle eight within half an hour of Mr. Knowles's accident. [Doc. 18–1, pp. 2, 9–10, ¶¶ 2–5, 18–20].

Mr. Buice testified in his deposition that he "could have finished" his 4 p.m. sweep before Mr. Knowles's accident but that he did not "specifically remember being

---

[2] *See also Mallory v. Piggly Wiggly S., Inc.*, 408 S.E.2d 443, 446 (Ga. Ct. App. 1991) (holding that an inspection 10–15 minutes before an injury was reasonable as a matter of law); *Smith v. Winn-Dixie Atlanta, Inc.*, 417 S.E.2d 202, 203 (Ga. Ct. App. 1992) (same); *Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 443 (Ga. Ct. App. 2010) (15 minutes); *Queen v. Kroger Co.*, 381 S.E.2d 413, 414 (Ga. Ct. App. 1989) (10–20 minutes); *Super Discount Markets, Inc. v. Clark*, 443 S.E.2d 876, 877 (Ga. Ct. App. 1994) (15–20 minutes); *but see Horn v. Foodmax of Ga., Inc.*, 437 S.E.2d 336, 337 (Ga. Ct. App. 1993) (finding inspections every 3–4 hours reasonable as a matter of law).

8

finished" before 4:30 p.m. [Doc. 17-2, p. 44:19–24]. Ingles stretches the undisputed fact that Mr. Buice "inspected aisle 8 [at some point] before Mr. Knowles slipped" far past its breaking point. [Doc. 19, p. 2 (emphasis added)]; [Doc. 17, p. 14]. While it is undisputed that Mr. Buice inspected aisle eight at some point before Mr. Knowles slipped, that is an answer to the wrong question. [Doc. 17-2, Buice Depo., p. 44:2–15].

So how much time elapsed between Mr. Buice's last inspection of aisle eight and Mr. Knowles's accident? That's the whole ball game at this stage, but Ingles never directly addresses it. *See* [Doc. 17, p. 14]; [Doc. 19, p. 2]. No evidence in the record contradicts the Store Sweep Log, which corroborates Mr. Buice's deposition testimony that he performed his sweeps around 2 p.m. and 4 p.m. that day. [Doc. 17-2, Buice Depo., p. 44:2–7]; [Doc. 17-2, p. 86]. The evidence suggests that sweeps generally began on schedule—sometimes a couple minutes early—and lasted about 30–45 minutes. [Doc. 17-2, Buice Depo., p. 41:8–25]. But no evidence in the record shows specific start- and end-times for these inspections. As noted above, Mr. Buice testified at his deposition that he "could have finished" his 4 p.m. sweep before Mr. Knowles slipped, but he did not "specifically remember being finished" before then. [*Id.* at p. 44:19–24]. Mr. Buice also testified that aisle eight was no more or less important than other aisles, and no evidence suggests that sweeps would have started or ended on that aisle. [*Id.* at p. 58:13–19].

Putting all of this together, the evidence only shows that Mr. Buice inspected

9

aisle eight sometime between 1:58–2:45 p.m. and again between 3:58–4:45 p.m. [*Id.* at pp. 41:8-25, 44:2–7, 58:13–19]; [Doc. 17-2, p. 86]. Even if it were undisputed that Mr. Buice finished his 4 p.m. sweep before 4:30 p.m., that could only establish that the last inspection was no earlier than 3:58 p.m.—32 minutes before Mr. Knowles's accident. *See* [Doc. 17-2, Buice Depo., pp. 41:8–25; 58:13–19]. But it would not prove that aisle eight was last inspected within half an hour of Mr. Knowles's accident, as Ingles appears to argue. *See* [*id.*]; [Doc. 17–3, p. 14]; [Doc. 19, p. 2]. The evidence, when viewed in the light most favorable to Plaintiffs, only confirms that aisle eight was last inspected no earlier than 1:58 p.m.—more than two and-a-half hours before Mr. Knowles's accident. [Doc. 17-2, Buice Depo., pp. 41:8–25, 44:2–7, 58:13–19]; [Doc. 17-2, p. 86]; *see Anderson*, 477 U.S. at 255. Thus, a dispute remains as to this fact. *See* Fed. R. Civ. P. 56(a).

The parties' disagreement is a "genuine dispute" because "a reasonable jury could" find that an unreasonable amount of time elapsed between the inspection of aisle eight and Mr. Knowles's accident and "return a verdict for the [Plaintiffs]." *Four Parcels*, 941 F.2d at 1438 (quoting *Anderson*, 477 U.S. at 248). As noted above, Georgia courts consistently hold that a lapse of more than half an hour between an inspection and an accident creates a jury question, and Ingles provides no case law holding that a lapse of 32 minutes is reasonable as a matter of law. *See* [Doc. 17-3, p. 13]; *see, e.g.*, *Shepard*, 527 S.E.2d at 39. Regardless of whether aisle eight was last inspected 32 minutes or more than two and-a-half hours before Mr. Knowles's accident, "a

10

reasonable jury could" find that delay unreasonable and "return a verdict for the [Plaintiffs]." *Four Parcels*, 941 F.2d at 1438 (quoting *Anderson*, 477 U.S. at 248). Because Ingles does not satisfy its burden, the burden does not shift to Plaintiffs, and this case must go to trial. *Four Parcels*, 941 F.2d at 1438 (citing *Celotex*, 477 U.S. at 325); *Porter*, 461 F.3d at 1320 (citing *Fitzpatrick*, 2 F.3d at 1115–17).

## CONCLUSION

Accordingly, because a "genuine dispute as to a[] material fact" remains in this case, precluding Ingles from demonstrating that it carried out a reasonable inspection program at the time of Mr. Knowles's accident as a matter of law, the Court **DENIES** Ingles's Motion for Summary Judgment [Doc. 17]. *See* Fed. R. Civ. P. 56(a).

**SO ORDERED** this 1st day of July, 2024.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**